MONROE, Judge.
David L. Adams is a law-enforcement officer employed by the Alabama Alcoholic Beverage Control Board (“the ABC Board”). Adams was scheduled to be off on November 7,1997; however, he went to his place of employment to pick up his paycheck and to complete some paperwork. While there, he suffered a heart attack. As a result of this heart attack, Adams was absent from work from November 7, 1997, until January 26, 1998.
On November 10, 1997, Adams’s supervisor completed an “Employer’s First Report of Injury or Occupational Disease” form and submitted it to the Alabama Department of Finance, Division of Risk Management.[1] The First Report of Injury form stated that Adams’s heart attack was caused by an “[ojccupational disease as defined in Title 36-30-20, Code of Alabama.”
On November 26, 1997, the State Employee Injury Compensation Trust Fund (SEICTF) denied coverage to Adams, based on its determination that “the benefits under the Program are not applicable because [Adams was] diagnosed with a medical condition that is not work related.” On January 20, 1998, Adams appealed this denial to the SEICTF Review Board.
In April 1998, while his appeal was pending before the SEICTF Review Board, Adams filed a declaratory-judgment action in the Circuit Court of Montgomery County against the ABC Board, the State Personnel Board, and the State Department of Finance, seeking a judgment declaring that he was entitled to be compensated for an occupational disease that resulted in his temporary' inability to perform work-related duties and declaring which state agency was responsible for compensating him. In August 1998, the circuit court issued an order, which dismissed the ABC Board and the State Personnel Board, and stated, in part:
*1049 “Adams contends that [§§ 36-30-20 through 23, Ala.Code 1975,] [entitle] him to compensation because he suffered from a compensable occupational disease as defined in § 36 — 30—20(4)[, Ala.Code 1975]. He appears to contend that [§§ 36-30-20 through -23] should be read in pari materia with [§§ 36-29A-1 through -8, Ala.Code 1975] and the [SEICTF] should award him compensation as directed by § 36-30-21; or he contends that the term ‘occupational disease’, as defined in § 36-30-20(4), should be added to or engrafted onto the definition of ‘occupational disease’ ... in Ala.Admin.Code 355-8-l-.05(a)(l) (1995); or he contends that some other agency should pay benefits.
“The court has considered §§ 36-30-1 through -23, and it appears that the Board of Adjustment is the awarding authority for death benefits and the State Employees Retirement Systems is the awarding authority for benefits due as a result of occupational disease. By definition, Adams qualifies for occupational disease benefits, § 36-30-20(3), provided he meets the requirements of §§ 36-30-22 and -23. Section 36-29A-5 provides that the benefits provided by §§ 36-30-20 to -23 are not affected by the State Employee Injury Compensation Program. Thus, the statutory provisions appear to have separate fields of operation. However, the State Employees Retirement System is not a party to this litigation; therefore, the court lacks jurisdiction to issue a declaration binding against it.
[[Image here]]
“It is Ordered, as follows:
[[Image here]]
“2. The motion to dismiss filed by [the State Department of Finance] is denied, at this time.
“3. Within 14 days of the date of this order, [Adams] shall add the State Employees Retirement Systems as a defendant to this action. If he does not, the action will be dismissed.”
In September 1998, the circuit court dismissed the action, without prejudice, when Adams failed to comply with paragraph 3 of the August 1998 order. Adams took no further action in regard to his declaratory-judgment case.
On December 15, 1998, the SEICTF Review Board issued a written opinion upholding the SEICTF’s denial of coverage. On January 15, 1999, Adams appealed to the Circuit Court of Montgomery County, pursuant to §§ 41-22-20 through -27, Ala. Code 1975. The Alabama Department of Finance (“the Department”) filed the record and transcript of the proceedings before the SEICTF Review Board. Adams and the Department filed briefs outlining their respective positions. On March 16, 2000, the circuit court issued an order, which stated, in part:
“It is HEREBY ORDERED, ADJUDGED, AND DECREED that this court has reviewed the transcript and considered briefs filed on said matter and reverses the decision of the SEICTF Review Board to deny [Adams] benefits because the findings and conclusions of the Review Board are contrary to the evidence and applicable law, as Ala.Code §§ 36-30-20 through 36-30-21 [provide] for coverage of [Adams’s] illness as an occupational disease under the SEICTF Program.”
The Department moved to alter, amend, or vacate the judgment, and the circuit court denied the motion. This appeal followed.
The Department contends that this matter is barred by the doctrine of res judicata because, it argues, the circuit court had previously determined that §§ 36-30-20 through -23 (“the State Troopers Program”) and §§ 36-29A-1 *1050 through -8 and the SEICTF administrative rules, §§ 355-8-1-.01 through -.06 (collectively referred to as “the injury-compensation program”), “appear to have separate fields of operation.” However, we find that the doctrine of res judicata does not apply in this case because the declaratory-judgment action was dismissed without having been fully litigated and there was no judgment rendered on the merits of the case. See Croft v. Pale, 585 So.2d 799, 800 (Ala.1991).
The Department also contends that the circuit court erred in reversing the decision of the SEICTF Review Board because, it says, there is no evidence that the State Troopers Program was applicable in any way to the injury-compensation program, especially in light of the clear and unambiguous language of the injury-compensation program.
Section 36-30-20, Ala.Code 1975, states, in part:
“When used in this article, the following terms shall have the following meanings, respectively, unless the context clearly indicates otherwise:
[[Image here]]
“(3) STATE TROOPER_law enforcement officer employed by the alcoholic beverage control board.
“(4) POLICEMAN’S OCCUPATIONAL DISEASE. Any condition or impairment of health caused by hypertension, heart disease or respiratory disease.
“(5) DISABILITY. Disability to perform duties as a policeman or state trooper.
“(6) BENEFIT. Any monetary allowance payable ... in the case of a state trooper, from the state employees’ retirement system to a ... state trooper on account of his disability ... irrespective of whether the same is payable under a pension law of the state or under some other law of the state.”
Section 36-30-21, Ala.Code 1975, states, in part:
“If a ... state trooper who qualifies for benefits under the provisions of this article suffers disability as a result of a policeman’s occupational disease, his disability shall be compensable the same as any service-connected disability ... under the state employees’ retirement system, the same as if injured in the line of duty.”
Section 36-29A-5, Ala.Code 1975, states, in part, “This chapter does not affect or repeal ... benefits provided by Sections 36-30-1 through 36-30-23.”
SEICTF points out that § 36-29A-1 provides that “[t]he Director of Finance shall have the authority to implement a program to provide compensation ... under such terms and conditions as the Director of Finance shall determine” and that SEICTF administrative rules §§ 355-8-1-.01 through -.06 establish the terms and conditions of the injury-compensation program. Section 355-8-l-.02(a)(15) of the SEICTF administrative rules states, in part:
“(15) Injury. ‘Injury and personal injury’ shall mean only injury by accident arising out of and in the course of employment, and shall not include a disease in any form, except for an occupational disease or where it results naturally and unavoidably from the accident.”
(Emphasis added.) Section 355-8-1-.05(a)(1) of the SEICTF administrative rules states, in part:
“(1) Occupational Disease. A disease arising out of and in the course of employment ... which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged but without regard to negligence or fault, if any, of the employer.”
*1051 (Emphasis added.) Section 355-8-l-.05(h) of the SEICTF administrative rules states, in part:
“(h) There shall not be a presumption that disablement ... from any cause or infirmity is the result of an occupational disease, nor that an occupational disease will result in disablement ... and any person claiming compensation or other benefits under this article shall have the burden of establishing that he or she is entitled to the benefits.”
SEICTF argues that under the above-quoted terms and conditions of the injury-compensation program, there is no presumption that an injury or illness is the result of an occupational disease; that Adams had the burden to prove that he was entitled to SEICTF benefits; and that he did not meet his burden. In its opinion denying the benefits, the SEICTF Review Board stated:
“Some time ago SEICTF asked its Medical Director, Dr. Kirven Ulmer, to coordinate with other physicians in conducting a review of medical literature to clarify the circumstances under which a cardiac event could be considered an occupational disease. This panel’s advisory recommendations were submitted to the Review Board by Medical Benefits Director Michael Jarrett. For a heart attack to be compensable, according to the medical panel, there must be a proven work exposure to ‘extremely heavy physical exertion, oxygen deficient atmosphere, [exposure to] carbon monoxide or other arrhythmogenic substances ... and a temporal relationship of cause and effect that would be limited to one to two hours after exposure.... ’ The panel found no objective data that a stressful job is any higher risk for cardiac events than nonstressful jobs. Furthermore, the panel found ‘no evidence to suggest that work-related mental stress is an independent contributor to this, therefore other occupations such as firefighting, law enforcement, emergency medicine are not specifically determined to be at higher risk than the population at large.’
“No evidence was presented to the Review Board that [Adams] was exposed to extremely heavy physical exertion, oxygen deficient atmosphere or any other of the stated potential causes of a heart attack within two hours of the attack. The only facts in the record are that [Adams] came into the office on his day off ‘to drop off some papers and pick up his paycheck.’ Because no evidence links [Adams’s] heart attack to an on-the-job probable cause on the day of the attack and because the SEICTF rules do not include a presumption that [Adams’s] heart attack was job-related, the Review Board finds that the claim was properly denied.”
The language quoted in the Review Board’s opinion is found in a SEICTF internal memo dated February 17, 1997, from Mike Jarrett, the medical benefits director, to the SEICTF staff.
Adams points out that by enacting the State Troopers Program, the legislature had already recognized that law-enforcement officers are engaged in a hazardous occupation subject to stress in excess of those in ordinary employment with the State. Adams argues that an administrative regulation or rule cannot supersede or prevail in the event of a conflict with a statute. Ex parte Jones Mfg. Co., 589 So.2d 208, 210 (Ala.1991).
SEICTF contends that if the legislature had intended to apply any of the provisions of the State Troopers Program to the injury-compensation program, it would have expressly said so and that since it did not, the provisions of the State Troopers Program have no application to, or relationship with, the injury-compensation program.
*1052 Adams further argues that although § 36-29A-5 states that the provisions of the injury-compensation program do not “affect or repeal” the provisions of the State Troopers Program, that does not mean that the injury-compensation program is not affected by or subject to the provisions of the State Troopers Program.
The basis for the SEICTF Review Board’s denial of benefits is an internal memorandum of February 17, 1997, which set out guidelines for the SEICTF staff to use in determining the compensability of cardiac events. The February 17, 1997 memo stated that “[tjhere is no evidence to suggest that work-related mental stress is an independent contributor to [cardiac events and that] ... occupations such as ... law enforcement ... are not specifically determined to be [at a] higher risk than the population at large.” However, the legislature clearly had recognized that law-enforcement officers are engaged in a hazardous occupation subject to stress in excess of those in ordinary employment with the State. As our supreme court stated in Ex parte Jones Mfg. Co., 589 So.2d at 210, “The provisions of a statute will prevail in any case of a conflict between a statute and an agency regulation.”
In light of the foregoing, we affirm the judgment of the trial court holding that §§ 36-30-20 and -21 provide “for coverage of [Adams’s] illness as an occupational disease under the SEICTF Program.”
AFFIRMED.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.

. In 1994, the legislature created the State Employees Injury Compensation Program. This is codified at §§ 36-29A-1 through -8, Ala.Code 1975. Section 36-29A-1 states, in part:
“The Director of Finance shall have the authority to implement a program to provide compensation for employees of the state ... who suffer personal injury as a result of accidents arising out of and in the course of their state employment, under such terms and conditions as the Director of Finance shall determine. The said program will be administered by the Division of Risk Management of the Department of Finance, and will take effect October 1, 1994.”
(Emphasis added.)
Thereafter, the director of finance promulgated the Division of Risk Management Administrative Code §§ 355-8-1-.01 through - .06, which established the terms and conditions of the injury-compensation program.